IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CASSANDRA SYKES, ) | |
| ) | |
| Plaintiff, ) | No. 1:22-cv-07033 |
| ) | |
| v. ) | Judge John J. Tharp, Jr. |
| ) | |
| EXPERIAN INFORMATION ) | |
| SOLUTIONS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cassandra Sykes alleges a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by defendant Experian Information Solutions, Inc. Experian now moves to dismiss Sykes's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons set forth herein, Experian's motion is granted.

## BACKGROUND

In November 2018, plaintiff Cassandra Sykes filed for Chapter 13 bankruptcy in the Northern District of Illinois. Am. Compl. ¶ 48, ECF No. 17. Sykes received an Order of Discharge on or about January 12, 2022, after she had complied with all payments and obligations under the bankruptcy plan. *Id.* ¶¶ 49-50. Sometime thereafter, Sykes obtained a consumer report from Experian, a "consumer reporting agency" ("CRA") as defined by the FCRA. *Id.* ¶¶ 7, 52; 15 U.S.C. § 1681a(f). The report, dated November 18, 2022, indicated that Sykes's bankruptcy had been discharged and reported her credit history in individual "tradelines" showing her various credit accounts, the status of those accounts, and the date of the last status update. *Id.* ¶¶ 53-55. Three listed accounts were reported as "Discharged through Bankruptcy Chapter 13." *Id.* ¶ 55. One,

however—Sykes's Community Loan/Bayview Loan Account (the "Community Account")—was reported as "Deed in Lieu," with a $145,952 balance, $2,762 past due, and a balloon payment of $67,209 due December 2055. *Id*. ¶¶ 61-63, 65. The report indicated that the Community Account was last updated in October 2016. *Id*. ¶ 65.

Sykes alleges the Community Account should have been reported as discharged through bankruptcy with a zero-dollar balance. *Id*. ¶ 64. Sykes turned over the deed connected to the Community Account in 2016, two years before she filed for bankruptcy. *Id*. ¶ 62. Experian was aware, Sykes alleges, that if a creditor received the deed for a property which was securing a mortgage, then that mortgage is unsecured, and the default rule—with rare exceptions—is that all unsecured debts are discharged as part of a Chapter 13 bankruptcy. *Id*. ¶¶ 33, 59. Given that Experian clearly had notice of Sykes's bankruptcy and the deed in lieu of foreclosure at the time it issued the November 2022 report, Sykes says, Experian should have known the Community Account had been discharged. *Id*. ¶ 64. Further, because the report indicated the Community Account was last updated in October 2016, almost six years earlier, Experian should have known that it was unreasonable to rely on that balance. *Id*. ¶ 66.

Sykes also alleges that the two other national consumer reporting agencies, Equifax and Trans Union, reported the Community Account as discharged. *Id*. ¶ 68. Sykes contends that either (1) Community furnished accurate information about the Community Account, showing it had a zero-dollar balance, and Experian simply rejected or overrode that information, or (2) Experian knew from past experiences that Community furnished inaccurate information regarding discharged debts and relied on the information Community provided anyway, despite knowing of Sykes's bankruptcy and the age of the last status report on the Community Account. *Id*. ¶¶ 69-71.

2

As a result of Experian's inaccurate reporting, Sykes alleges she was given a lower credit score than she otherwise would have received. *Id.* ¶¶ 78-80. Two of her credit card applications were denied, and one was approved at less than favorable rates and a lower credit limit. *Id.* ¶¶ 81-83. Sykes also alleges she has incurred various forms of emotional and mental distress. *Id.* ¶ 85.

## ANALYSIS

Experian argues that Sykes's Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Sykes has not alleged that her November 2022 credit report contained a factual inaccuracy or that Experian had actual notice that the debt had been discharged. In deciding a Rule 12(b)(6) motion, the Court must accept all Sykes's allegations as true and draw all reasonable inferences in her favor, but "need not accept as true statements of law or unsupported conclusory factual allegations." *Bilek v. Fed Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (quoting *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)).

### I. Legal Inaccuracy

Sykes asserts that Experian's conduct violated 15 U.S.C. § 1681e(b), which requires consumer reporting agencies like Experian to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." "A threshold requirement for claims under [§ 1681e(b)] is that there must be an inaccuracy in the consumer's credit report." *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021). But an "inaccuracy" under the FCRA means a factual inaccuracy as opposed to a legal inaccuracy. *Id.* "Consumer reporting agencies are statutorily obligated to prevent and reinvestigate the former but are neither obligated nor qualified to resolve the latter." *Soyinka v. Wakefield & Assocs.*, No. 20-cv-01778, 2021 WL 7179114, at *1 (N.D. Ill. Nov. 24, 2021). To determine whether an inaccuracy is factual or legal, courts must determine "whether the alleged inaccuracy

turns on *applying* law to facts or simply *examining* the facts alone." *Chuluunbat*, 4 F.4th at 568 (emphasis in original). Only a court or other tribunal—not a reporting agency—can determine a legal inaccuracy. *See Denan v. Trans Union LLC*, 959 F.3d 290, 295 (7th Cir. 2020) ("The power to resolve . . . legal issues exceeds the competencies of consumer reporting agencies."). "[P]aradigmatic examples" of factual inaccuracies on a credit report include incorrect debt amounts or incorrectly named debtors; legal inaccuracies, by contrast, may include debts which are invalid by operation of law. *Soyinka*, 2021 WL 7179114, at *1; *see also Denan*, 959 F.3d at 296 (plaintiffs who alleged debts included on their credit reports were "inaccurate" because the lenders lacked the correct licensure to make the loans could not state a claim under the FCRA because "[o]nly a court can fully and finally resolve the legal question of a loan's validity").

Experian argues that the debt shown on Sykes's November 2022 credit report was, at most, a legal inaccuracy. Experian asserts, contrary to Sykes's characterization of Chapter 13 bankruptcy law in her complaint, that the default rule is that mortgage debts are *not* discharged in Chapter 13 bankruptcies because of the "anti-modification" provision at 11 U.S.C. § 1322(b)(2). That provision states that a Chapter 13 bankruptcy plan may "modify the rights of holders of secured claims, *other than* a claim secured only by a security interest in real property that is the debtor's principal residence . . . ." 11 U.S.C. § 1322(b)(2) (emphasis added). The purpose of that provision is to protect, during a Chapter 13 bankruptcy, "rights that were 'bargained for by the mortgagor and the mortgagee' . . . ." *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 329 (1993) (quoting *Dewsnup v. Timm*, 502 U.S. 410, 417 (1992)). Because 11 U.S.C. § 1328(a) states that a Chapter 13 discharge order discharges only those debts "provided for by the [Chapter 13] plan," § 1322(b)(2) effectively prohibits the discharge of a mortgage. *See In re Dukes*, 909 F.3d 1306, 1320 (11th Cir. 2018) ("The antimodification provision prohibits a plan from modifying the rights of a holder of a claim secured

4

only by a security interest in real property that is the debtor's principal residence. Clearly, a discharge of a debtor's obligations under his residential mortgage would dramatically modify the rights of the holder of that mortgage." (citation modified)).

Experian also points to documents filed in Sykes's bankruptcy case which suggest, it argues, that Sykes's discharge order did not cover the Community Account.[1] The discharge order itself does not list specific discharged debts, stating only: "Most debts are covered by the discharge, but not all. . . . This information is only a general summary of a chapter 13 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case." Order of Discharge at 1-2, *In re Sykes*, Ch. 13 Case No. 18-31035 (Bankr. N.D. Ill. Jan. 12, 2022), Dkt. No. 38. The order further notes that "[s]ome debts are not discharged," and lists various examples, including "debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case," "some debts which the debtors did not properly list," and "debts provided for under 11 U.S.C. § 1322(b)(5) . . . ."[2] *Id*.

Consistent with her position that the Bayview loan was unsecured because she had surrendered the deed two years earlier, Sykes did not list the Community Account as a secured claim in her bankruptcy petition and instead listed a "Notice Only" loan from "Bayview Loan" as

---

[1] Sykes objects to the consideration of those documents, arguing that the Court is required to construe all facts in her complaint as true. But the Court is also allowed to consider any "documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Public court records are proper for judicial notice. *See Fox v. Am. Alt. Ins. Corp.*, 757 F.3d 680, 684 (7th Cir. 2014). Given the centrality of Sykes's discharge order and bankruptcy filings to her complaint, and the fact that those materials are part of the public record, the Court may properly consider them in ruling on Experian's 12(b)(6) motion.

[2] 11 U.S.C. § 1322(b)(5) states: "[N]otwithstanding [the anti-modification provision at §1322(b)(2), a Chapter 13 plan may] provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]"

a non-priority, unsecured claim with a balance of $0.00. Voluntary Petition at 23-24, *In re Sykes*, Ch. 13 No. 18-31035 (Bankr. N.D. Ill. Nov. 2, 2018), Dkt. No. 1. Sykes points to this distinction as dispositive: because she turned over the deed for the mortgaged property (Am. Compl. ¶ 62), the Community Account was unsecured, making § 1322(b)(2) irrelevant because it applies only to claims which are "***secured*** by a security interest in real property . . . ." 11 U.S.C. § 1322(b)(2) (emphasis added). Experian attaches to its motion the Deed in Lieu of Foreclosure executed by Sykes and Bayview Loan Servicing in September 2016. *See* Ex. A to Def.'s Memo. in Supp. of Mot. to Dismiss, ECF No. 21-1.[3] In it, Sykes acknowledges: (1) "that [she] is in default of [her] obligations under the Loan and the Note, and that the entire unpaid principal balance . . . is immediately due and payable . . ." and (2) "that the release of personal liability and forgiveness of payment of the entire unpaid principal balance thereof . . . is adequate consideration for the transfer of the Property to the Transferee . . . ." *Id*. at 2.

The Court agrees with Experian that the status of Sykes's Community Account is fundamentally a legal question, to be determined by analysis of her agreement with Bayview Loan Servicing, the application of the Bankruptcy Code to that particular debt, and the scope of the bankruptcy court's discharge order. Experian is not best positioned to make that determination, and the FCRA does not require it to do so. *See DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) ("Whether the mortgage is valid turns on questions that can only be resolved by a court of law . . . [because it is] a legal issue that a credit agency . . . is neither qualified nor obligated

---

[3] Sykes objects to Experian's inclusion of this exhibit, arguing that she did not reference it in her complaint and that she has not had the opportunity to vet it. But the document is a public record from the Cook County Recorder of Deeds, making it fairly subject to judicial notice. *Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Nor has Sykes substantively disputed the document's authenticity. Her speculation that the document may not "represent the entirety of the Illinois public record" in no way suggests it is inauthentic. Pl.'s Opp. to Mot. to Dismiss 10, ECF No. 26.

to resolve under the FCRA."); *see also Johnson v. Trans Union, LLC*, No. 10-cv-06960, 2012 WL 983793, at *7 (N.D. Ill. Mar. 22, 2012), *aff'd*, 524 Fed. App'x 268 (7th Cir. 2013) (FCRA litigation is "not the appropriate way" to resolve a dispute over the legal status of a debt).

Weighing in Experian's favor is the fact that the discharge order does not specify that the Community Account (or any other particular debt) is included. Experian highlights *Mader v. Experian Information Solutions, Inc.*, in which a plaintiff received a Chapter 7 bankruptcy discharge which stated only that the plaintiff was "released from all dischargeable debts," but— like Sykes's discharge order—listed some general exceptions to bankruptcy discharges, including "most student loans[.]" 56 F.4th 264, 266 (2d Cir. 2023) (quotation marks omitted). After Experian continued to include an educational loan as past due on his credit report, the plaintiff sued, arguing that the loan was private and therefore not exempted from discharge under 11 U.S.C. § 523(a)(8), which defines nondischargeable educational loans as those "made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." *Id*. at 267. The Second Circuit found that the "accuracy" of the student loan on the plaintiff's credit report depended on the application of that subsection of the Bankruptcy Code to the loan at issue, which "would require resolving the factual dispute over the funding and structure" of the specific loan: "The bespoke attention and legal reasoning required to determine the post-bankruptcy validity of Mader's debt means that its status is not sufficiently objectively verifiable to render Mader's credit report 'inaccurate' under the FCRA." *Id*. at 270. Whether or not Sykes's bankruptcy discharge covered the Community Account similarly "evades objective verification," as "[t]here is no bankruptcy order explicitly discharging this debt." *Id*. at 269.

7

Another case, *Warner v. Equifax Information Services, LLC*, No. 23-cv-01286, 2025 WL 714243 (N.D. Tex. Feb. 11, 2025), is also instructive. There, a plaintiff alleged that her mortgage debt *was* excepted from her Chapter 13 bankruptcy discharge because the Bankruptcy Code "bar[s] discharging home mortgage debts in a Chapter 13 bankruptcy." 2025 WL 714243 at *4. Her credit report, however, showed her mortgage as being part of a wage earner plan connected to a bankruptcy. *Id*. at *1. The court determined that because neither the discharge order nor the trustee's final report clearly indicated that the mortgage was excepted, the plaintiff had not alleged a factual inaccuracy. *Id*. at *4. "[E]ven if such debts normally are not discharged, courts have stated that 'requiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party.'" *Id*. (quoting *Hupfauer v. Citibank, N.A.*, No. 16-cv-00475, 2016 WL 4506798, at *7 (N.D. Ill. Aug. 19, 2016)).[4] The plaintiff's claim, therefore, was merely "a dispute over the legal ramifications of her bankruptcy, not a factual inaccuracy." *Id*.

---

[4] A CRA's capacity to examine bankruptcy filings speaks not only to the factual accuracy element of a FCRA claim, but also to the reasonableness of the CRA's procedures in preventing inaccuracies. In *Crump v. Carrington Mortgage Services, LLC*, for example, the court found that where a Chapter 13 plan had expressly accounted for the plaintiff's surrender of her home to the bank in satisfaction of the bank's secured claim, and Experian reported the mortgage as past due, the plaintiff had plausibly alleged a factual inaccuracy. No. 18-cv-02302, 2019 WL 118490, at *4 (N.D. Ill. Jan. 7, 2019). But because the status of the debt could only be determined from documents in the bankruptcy docket, which would have required Experian to "employ a live human being, with at least a little legal training, to review the documents and classify the debt . . . reported as discharged or not," Experian had not violated § 1681e(b), as "manually cross-checking [the creditor's] information against several documents on [the] bankruptcy docket" was not the type of reasonable procedure required by § 1681e(b). *Id*. at *6 (quotation marks omitted).

The reasonableness of a CRA's procedures was also examined in *Sarver v. Experian Information Solutions*, in which Experian inaccurately reported that certain of the plaintiff's bank accounts had been involved in bankruptcy. 390 F.3d 969, 970 (7th Cir. 2004). The plaintiff argued that because all other accounts listed on his credit report were not listed as having been involved in bankruptcy, Experian should have noticed the "anomaly" and investigated further. *Id*. at 972. The Seventh Circuit held, however, that "[i]n the absence of notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist, we

Sykes makes the opposite claim from the plaintiff in *Warner*. She alleges that the Community Account, because it was an unsecured mortgage debt, ***was*** discharged in bankruptcy. Specifically, Sykes alleges that "Defendant failed to implement [a bankruptcy scrub] procedure for unsecured Chapter 13 debts, even though Defendant knows that upon discharge, such debts are treated the same as Chapter 7 debts (discharged with zero balance), as long as the debts were listed in the petition" (Am. Compl. ¶ 38) and that after the discharge, she "was not personally liable for the unsecured dischargeable debts, and these debts had a zero-dollar balance . . . ." (*id*. ¶ 51). But these are legal conclusions, which the Court need not accept as true in deciding a motion to dismiss. *See Hickley v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002) ("[W]e are not obliged to accept as true legal conclusions or unsupported conclusions of fact."). The Court therefore agrees with the reasoning of the *Mader* and *Warner* courts that the effect of Sykes's Chapter 13 bankruptcy discharge on the Community Account is a determination which, absent an affirmative judicial order making the effect clear, Experian simply cannot make.

To be sure, courts have differed in their determination of whether a general discharge order, which does not specify the inclusion of specific debts, is sufficient to render the inclusion of specific debts on a credit report factually inaccurate. Sykes, for example, points to *Laura v.*

---

cannot find that such a requirement to investigate would be reasonable given the enormous volume of information Experian processes daily." *Id*. Similarly, in *Rydholm v. Equifax Information Services LLC*, absent allegations that a furnisher "lacked reliability as a source," the Eighth Circuit held that a general discharge order is "insufficient to trigger a duty to investigate." 44 F.4th 1105, 1109 (8th Cir. 2022).

In this case, Sykes has alleged that Experian received correct information about the Community Account from Community and "rejected or otherwise overrode" it (Am. Compl. ¶ 69), or, alternatively, that Experian "knew from past experiences that Community furnished inaccurate information regarding discharged debts" but "blindly relied on the information provided by Community" (Am. Compl. ¶¶ 70-71). While perhaps bare bones, such allegations state a claim that Experian had "notice of prevalent unreliable information from a reporting lender" and therefore unreasonably relied on that information in violation of §1681e(b). *Sarver*, 390 F.3d at 972. Accordingly, the Court has focused its analysis on Sykes's failure to allege an inaccuracy.

9

*Experian Information Solutions, Inc.*, in which a plaintiff failed to list a utility debt on her Chapter 7 bankruptcy petition. No. 20-cv-01573, 2022 WL 823853, at *1 (N.D. Ill. Mar. 18, 2022). Even though the bankruptcy ended in discharge, the utility company still reported the delinquent account to Experian, which listed the past-due balance on the plaintiff's credit report. *Id*. at *1-2. The court held that it was "not a case where Experian need resolve complex legal questions," and that Experian should have assumed the discharge order applied to the debt. *Id*. at *3. A similar conclusion was reached in *Coleman v. Experian Information Solutions, Inc.*, in which a pre-bankruptcy debt omitted from the plaintiff's Chapter 7 petition appeared with a balance on the plaintiff's credit report. 655 F. Supp. 3d 1285, 1295 (N.D. Ga. 2023). The Court found that the lending bank had not disputed that the debt was discharged, and therefore there was no legal question, because "[w]hen a Chapter 7 debtor receives a discharge, she is discharged from all debts and any liability on a claim that arose, or are determined to arise, before the bankruptcy is filed." *Id*. at 1301 (quotation marks omitted).

But the Court agrees with Experian that the context of a Chapter 7 bankruptcy—the bankruptcy at issue in *Laura* and *Coleman*, which in any event are not binding—is different from a Chapter 13 bankruptcy. In fact, Experian has developed a scrub procedure to identify pre-bankruptcy debts that are likely to have been discharged in a Chapter 7 bankruptcy—a practice it implemented pursuant to a class action settlement agreement in *White v. Experian Information Solutions, Inc.*, No. SA CV 05-1070 DOC (MLGx) (Lead Case), 2008 WL 11518799 (C.D. Cal. Aug. 19, 2008). The *White* order directs Experian to "assume that certain categories of pre-bankruptcy consumer debts have been discharged in Chapter 7 bankruptcies based on the statistical likelihood of discharge of these categories of debt, and without either the affected creditors or Consumers reporting the debt to Defendants as having been discharged." *White*, 2008 WL

11518799, at *13, ¶ 5.1. Sykes highlights this procedure in her Amended Complaint but argues that Experian "failed to implement such automated procedure for Chapter 13 debts, even though [Experian] knows that upon discharge, such debts are treated the same as Chapter 7 debts (discharged with zero balance), as long as the debts were listed in the petition." Am. Compl. ¶ 38.

But the fact remains that Sykes has not pointed to any case law like *White* expressly requiring Experian to use such procedures in the Chapter 13 bankruptcy. Further, as Experian argues, in a no-asset, Chapter 7 bankruptcy, "the failure to list a debt [in a bankruptcy petition] does not transform a dischargeable liability into a nondischargeable one" because "there is nothing to distribute to the creditors as dividends regardless of whether a claim is filed" against a listed debt. *In re Karras*, 165 B.R. 636, 638-39 (N.D. Ill. 1994). In a Chapter 13 bankruptcy, by contrast, the debtor must submit a plan to a bankruptcy court for approval, complete all provisions of that plan, and then move for an order of discharge, which is limited to "all debts provided for by the plan or disallowed under section 502 of this title," with certain exceptions not applicable here. 11 U.S.C. § 1328. In that context, it cannot be assumed that all pre-bankruptcy debts are discharged in a Chapter 13 bankruptcy.

Even if it could be assumed that all pre-bankruptcy debts are discharged, the status of Sykes's Community Account—like the student debt at issue in *Mader*—has not been legally determined. The Deed in Lieu of Foreclosure states that "the release of personal liability and forgiveness of payment of the entire unpaid principal balance thereof . . . is adequate consideration for the transfer of the Property to the Transferee . . . ." Ex. A to Def.'s Memo. in Supp. of Mot. to Dismiss 2. But that language is not a legal finding, by a court or tribunal, that Sykes's debt is forgiven. Even if it were reasonable to impose on Experian the burden to scour Sykes's bankruptcy petition or Cook County's Recorder's records (and the Court agrees with the *Warner* and other

11

courts that it is not), Experian is not equipped with the "bespoke attention and legal reasoning required to determine the post-bankruptcy validity of [Sykes's] debt" and therefore cannot "objectively verif[y]" the status of the Community Account. *Mader*, 56 F.4th at 270.

For all these reasons, Sykes has failed to allege a factual inaccuracy sufficient to state a cognizable claim under 15 U.S.C. § 1681e(b).

\* \* \*

Experian's motion to dismiss for failure to state a claim under Rule 12(b)(6) is granted. As the dismissal is based on an issue of law, and Plaintiff has not in any event requested leave to amend, the Court concludes that amendment of the complaint would be futile. The dismissal is therefore with prejudice and final judgment will be entered.

Date: June 18, 2025

John J. Tharp, Jr.
United States District Judge

12